http://www.va.gov/vetapp16/Files3/1626393.txt

Citation Nr: 1626393 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 14-04 112 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts

THE ISSUES

1. Entitlement to a disability rating in excess of 80 percent for right kidney function with chronic bladder infections, now with left kidney involvement, prior to January 22, 2015.

2. Entitlement to a disability rating in excess of 60 percent for right kidney function with chronic bladder infections, now with left kidney involvement, to include restoration to 80 percent, beginning January 22, 2015.

3. Entitlement to service connection for erectile dysfunction on a direct basis, as secondary to right kidney function with chronic bladder infections, now with left kidney involvement, and as due to VA medical treatment under 38 U.S.C.A. § 1151 (West 2014).

4. Entitlement to special monthly compensation (SMC) for loss of use of a creative organ.

REPRESENTATION

Veteran represented by: Massachusetts Department of Veterans Services

ATTORNEY FOR THE BOARD

Jessica O'Connell, Associate Counsel 

INTRODUCTION

The Veteran served on active duty from April 1960 to November 1961.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a October 2013 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts.

Historically, in February 2012, the Board found that the record reasonably raised the issues of entitlement to service connection for erectile dysfunction and left kidney dysfunction and referred these issues to the RO for appropriate action. In October 2013, the RO denied entitlement to compensation under 38 U.S.C.A. § 1151 for erectile dysfunction and evaluated the nonservice-connected left kidney disability with the service-connected right kidney disability as if both were service-connected. See 38 C.F.R. § 3.383(a)(2015) (regarding special consideration for paired organs). The Veteran disagreed with this decision and perfected his appeal in February 2014.

The Board recharacterized the issues pertaining to erectile dysfuntion to comport with the Veteran's contentions. See Notice of Disagreement, November 2013).

In August 2015 the Board remanded the claims for additional development.

The record now before the Board consists of the Veteran's electronic claims files located within the Veterans Benefits Management System (VBMS) and Virtual VA.

The issues of entitlement to service connection for erectile dysfunction and entitlement to SMC for loss of use of a creative organ are addressed in the REMAND section that follows the below ORDER section of this decision.

FINDINGS OF FACT

1. Throughout the period on appeal, the Veteran's right kidney function with chronic bladder infections, now with left kidney involvement, has been manifested by markedly decreased function of the right kidney, which precludes him from performing more than sedentary activities.

2. The Veteran's voiding dysfunction has been aggravated beyond the natural progression of the disease by his service-connected total cystectomy status post bladder cancer.

CONCLUSIONS OF LAW

1. Throughout the period on appeal, the criteria for a 100 percent disability rating for right kidney function with chronic bladder infections, now with left kidney involvement, have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2014); 38 C.F.R. §§ 4.115a, 4.115b, Diagnostic Code 7504 (2015).

2. The criteria for service connection for voiding dysfunction, as aggravated by the Veteran's service-connected total cystectomy status post bladder cancer, have been met. 38 U.S.C.A. §§ 1131, 5107(b) (West 2014); 38 C.F.R. § 3.310(b) (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA has certain statutory and regulatory obligations to provide veterans with notice and assistance with regard to their claims. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015). As the Board is granting the Veteran a 100 percent rating for bilateral kidney dysfunction with chronic bladder infections for the entire period on appeal and is granting entitlement to service connection for voiding dysfunction, there is no need to discuss whether the Veteran has received sufficient notice or assistance as these decisions represent a full grant of benefits.

The Veteran's claims for increased ratings for bilateral kidney dysfunction with chronic bladder infections were remanded in August 2015 to obtain a medical opinion regarding the etiology of the Veteran's voiding dysfunction. An adequate opinion was obtained and the Board finds the RO substantially complied with the Board's remand directives. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board has thoroughly reviewed all of the evidence of record, with an emphasis on the medical evidence pertinent to the claim on appeal. Although all the evidence of record has been thoroughly reviewed, the Board is not required to discuss each piece of evidence in detail. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4 (2015). The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015).

Historically, service connection for right kidney dysfunction with chronic bladder infections was first granted in a November 2004 Board decision and in December 2004 the RO assigned a noncompensable rating. The Veteran appealed that rating and in a February 2005 rating decision, the RO increased his rating to 30 percent disabling for the entire period on appeal. The Veteran continued to dispute the assigned rating and in December 2012 the Board continued the 30 percent rating prior to February 17, 1994; assigned a 60 percent rating beginning February 17, 1994, and prior to January 10, 1995; and assigned an 80 percent rating beginning January 10, 1995.

In a statement received by VA on February 18, 2010, the Veteran raised a claim of service connection for left kidney dysfunction as secondary to his service-connected right kidney dysfunction with chronic bladder infections. In the October 2013 rating decision currently on appeal, the RO granted service connection for left kidney dysfunction, merged that issue with the already service-connected right kidney dysfunction with chronic bladder infections, and continued the assigned 80 percent rating. In a December 2013 notice of disagreement, the Veteran disagreed with the assigned 80 percent rating and argued that he should receive a separate rating for voiding dysfunction as secondary to bilateral kidney dysfunction with chronic bladder infections. In a February 2015 rating decision, the RO continued the assigned 80 percent rating for bilateral kidney dysfunction with chronic bladder infections prior to January 22, 2015, and reduced the rating to 60 percent disabling beginning January 22, 2015.

Service connection may be established for disability due to a disease or injury that was incurred in or aggravated by active military service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303 (2015). Service connection may also be granted for any increase in severity of a nonservice-connected disability that is proximately due to the result of a service-connected disease or injury, and not due to the natural progress of the nonservice-connected disability. 38 C.F.R. § 3.310(b).

In an October 2015 medical opinion, a VA physician found the Veteran had a neurogenic bladder, which adequately explained his voiding dysfunction. However, the physician also found that it was "at least as likely as not" that the Veteran's voiding function had been aggravated beyond its natural course by a transurethral resection of a bladder tumor in 2014. Notably, service connection for total cystectomy status post bladder cancer has been in effect since October 8, 2014, the date of the surgery, and has been rated as 100 percent disabling. Based on the October 2015 medical opinion, service connection for voiding dysfunction, secondary to the Veteran's service-connected total cystectomy status post bladder cancer, is warranted.

With regard to the February 2015 rating decision, which reduced the Veteran's rating for bilateral kidney dysfunction with chronic bladder infections to 60 percent disabling, beginning January 22, 2015, the Board notes that VA regulations provide that when a disability rating has been in effect for 20 years or more, it may only be reduced by showing that such rating was based on fraud. 38 C.F.R. § 3.951(b) (2015). The 20 year period is computed from the effective date of the evaluation to the effective date of reduction of evaluation. Id. The Veteran's 80 percent disability rating had been in effect since January 10, 1995, and was reduced effective January 22, 2015, over 20 years later. There is no evidence that this rating was based on fraud and it must be restored to 80 percent.

Next, the Board will turn to whether a disability rating in excess of 80 percent for bilateral kidney dysfunction with chronic bladder infections is warranted throughout the period on appeal.

The Veteran's disability is currently rated under the diagnostic code pertaining to chronic pyelonephritis (inflammation of the substance of the kidney as a result of bacterial infection). 38 C.F.R. § 4.115b, Diagnostic Code 7504. Diagnostic Code 7504 provides that pyelonephritis should be rated as renal dysfunction or urinary tract infection (UTI), whichever is predominant. Id. The rating criteria for renal dysfunction and UTIs are found under the regulation governing ratings of the genitourinary system. See 38 C.F.R. § 4.115a. Since service connection has been in effect, the Veteran's disability has been rated under the criteria pertaining to renal dysfunction. Id. 

Under the criteria pertaining to renal dysfunction, the next highest and maximum 100 percent rating is warranted when regular dialysis is required or when a veteran is precluded from more than sedentary activity from one of the following: persistent edema and albuminuria; or, BUN more than 80mg%; or, creatinine more than 8mg%; or, markedly decreased function of kidney or other organ systems, especially cardiovascular. Id.

A June 2009 renal imaging scan revealed that the left kidney was dominant in function and likely hypertrophied. Initial inflow to the small right kidney was "markedly decreased" and it was difficult to assess. The examiner concluded the large left kidney was dominant, providing 95 percent of total renal function, while the small, poor, right kidney only provided five percent of total renal function. At a June 2013 VA examination, the examiner determined the Veteran's right kidney was atrophied and "very poorly functioning."

The medical evidence demonstrates that the Veteran has markedly decreased function of his right kidney. In order to receive the maximum 100 percent schedular rating for renal dysfunction, the rating criteria also require that the markedly decreased functioning of the kidney precludes the Veteran from more than sedentary activity. The Veteran is a paraplegic due to a nonservice-connected spinal injury and it is unclear whether his poor kidney functioning would preclude him from more than sedentary activity. In that regard, affording the Veteran the benefit of the doubt, the Board finds that his poor kidney functioning would preclude him from more than sedentary activity. Accordingly, the maximum 100 percent schedular rating is warranted for the entire period on appeal.

Beginning February 17, 1994, and prior to October 8, 2014, the Veteran was in receipt of a total disability rating for compensation purposes based on individual unemployability (TDIU). Beginning October 8, 2014, the Veteran's combined schedular rating has been at 100 percent disabling and he has been in receipt of SMC based on a single disability rated as 100 percent disabling and an additional disability rated as 60 percent disabling. See 38 C.F.R. § 3.350(i) (2015). Thus, the issue of entitlement to TDIU on or after October 8, 2014, is moot. See Bradley v. Peake, 22 Vet. App. 280, 293 (2008).

The Board has considered whether entitlement to SMC under 38 C.F.R. § 3.350(i) at any point prior to October 8, 2014, is warranted. However, prior to that date, there is no point at which the Veteran had one disability rated as 100 percent disabling and an additional disability rated at least 60 percent disabling; therefore, SMC under 38 C.F.R. § 3.350(i) prior to October 8, 2014, is not warranted.

The Board has also considered whether the claim should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration. See 38 C.F.R. § 3.321(b)(1) (2015). Generally, evaluating a disability using either the corresponding or analogous diagnostic codes contained in the Rating Schedule is sufficient. See 38 C.F.R. §§ 4.20, 4.27 (2015). However, because the ratings are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstance, but nevertheless would still be adequate to address the average impairment in earning capacity caused by disability. In exceptional cases where the rating is inadequate, it may be appropriate to assign an extraschedular rating. 38 C.F.R. § 3.321(b).

The Court has held that the threshold factor for extraschedular consideration is a finding on the part of the RO or the Board that the evidence presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability at issue are inadequate. Thun v. Peake, 22 Vet. App. 111, 115 (2008). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the veteran's disability with the established criteria provided in the rating schedule for the disability. Id. If the criteria reasonably describe the veteran's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned evaluation is therefore adequate, and no referral for extra-schedular consideration is required. Id.

The Board has increased the Veteran's disability rating for bilateral kidney dysfunction with chronic bladder infections to the maximum 100 percent schedular rating, and the record reflects that manifestations of this disability are contemplated by the schedular criteria, either in connection with the 100 percent rating or in connection with another service-connected disability, such as total cystectomy status post bladder cancer and voiding dysfunction. The Veteran has not required frequent hospitalizations for his disabilities. While the Veteran has not been employed during the pendency of the appeal, and throughout the period on appeal he has been in receipt of either TDIU or SMC, marked interference with work is conceded. However, there is no indication that the average industrial impairment from his service-connected disabilities would be in excess of that contemplated by the increased rating granted herein and the already assigned TDIU and SMC ratings. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Accordingly, the Board has determined that referral of this case for extraschedular consideration is not warranted.

ORDER

Throughout the entire period on appeal, a 100 percent disability rating for the Veteran's right kidney dysfunction with chronic bladder infections, now with left kidney involvement, is granted subject to the criteria governing the payment of monetary benefits.

Service connection for voiding dysfunction, as aggravated by the Veteran's service-connected total cystectomy status post bladder cancer, is granted.

REMAND

With regard to the Veteran's claim for service connection for erectile dysfunction, it appears the Veteran is claiming entitlement on a direct basis, on a secondary basis due to bilateral kidney dysfunction with chronic bladder infections, and as due to VA medical treatment under 38 U.S.C.A. § 1151. Accordingly, the Board has recharacterized the issue on appeal on the title page to encompass all theories of entitlement.

With regard to the claim for service connection for erectile dysfunction under 38 U.S.C.A. § 1151, the Veteran has not been provided with the required statutory and regulatory notice regarding the evidence required to substantiate his claim. As such, a remand is required to provide him with this notice.

As the claim for SMC for loss of use of a creative organ is predicated on a grant of service connection for erectile dysfunction, that issue must also be remanded. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991).

Accordingly, the case is REMANDED to the RO or the Appeals Management Center (AMC) in Washington, D.C. for the following actions:

1. The RO or AMC must send the Veteran and his representative the proper statutory and regulatory notice regarding what is necessary to substantiate a claim for entitlement to compensation under 38 U.S.C.A. § 1151.

This letter must also inform the Veteran that he may submit additional evidence in support of his claim. The Veteran and his representative must be given a reasonable period within which to respond.

2. The RO or the AMC must undertake any additional development it deems to be warranted.

3. Then, the RO or the AMC must readjudicate the Veteran's claims. If any benefit sought on appeal is not granted to the Veteran's satisfaction, the Veteran and his representative must be provided a supplemental statement of the case and be given an adequate opportunity to respond. Thereafter, the case must be returned to the Board for further appellate action.

By this remand, the Board intimates no opinion as to any final outcome warranted.

The Veteran need take no action until he is otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
T. REYNOLDS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs